## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **PATRICK HENRY MEDICAL, L.L.C., d/b/a BREATH OF LIFE and MIRACLE DURABLE MEDICAL EQUIPMENT, INC., d/b/a MIRACLE DME,** | **Civil Action No.** |
| **Plaintiffs,** | |
| **vs.** | **JURY TRIAL** |
| **PROCHANT, INC.** | |
| **Defendant.** | |

### PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW  Patrick Henry Medical, L.L.C., d/b/a Breath of Life and Miracle Durable Medical Equipment, Inc., d/b/a Miracle DME (collectively "Plaintiffs"), and file this Plaintiffs' Original Complaint against Prochant, Inc., and would respectfully show the Court as follows:

### I. JURY DEMAND

1.      Plaintiffs demand trial by jury pursuant to Fed.R.Civ.P. 38.

### II.  PARTIES

2.      Plaintiff, Patrick Henry Medical, LLC is a Texas limited liability company whose principal place of business is at 1708 Baker Road, Sherman, TX, 75090.

3.      Plaintiff,  Miracle Durable Medical Equipment, Inc. is a Texas corporation whose principal place of business is at 1708 Baker Road, Sherman, Texas 75090.

4.     Defendant, Prochant, Inc. is a foreign corporation organized under the laws of the State of Georgia whose primary place of business is in North Carolina. Prochant, Inc. does business in the State of Texas by billing for patients residing in the Eastern District of Texas and by taking its commissions from the collections for said patients, however, it neither maintains a regular place of business in the State of Texas nor does it have a registered agent for service of process. Therefore, Prochant, Inc. can be served with substitute service under Tex. Civ. Prac. & Rem. Code § 17.041, *et seq.*, by serving the Texas Secretary of State at P.O. Box 12079, Austin, TX 78711-2079; and the Secretary of State can serve process on Prochant, Inc. by serving its registered agent in Georgia, Business Filings Incorporated, 289 South Culver Street, Lawrenceville, GA, 30046.

## III.  JURISDICTION AND VENUE

5.     This Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00, and there is complete diversity of citizenship between all of the Plaintiffs and the Defendant.

6.     This Court has specific jurisdiction over Prochant, Inc. (hereafter "Prochant") in that it purposefully directed its activities toward the collections of government payments on behalf of citizens and residents of the State of Texas who reside in the Eastern District of Texas.

7.     Prochant deliberately, knowingly, and purposefully directed numerous emails, attachments, and phone calls to Plaintiffs within Texas engaging in active and substantive negotiations concerning Prochant's services and Plaintiffs' needs.

8.     Prochant purposefully availed itself of this forum to market its services to Plaintiffs located in the State of Texas, to take steps to process billings made on behalf of citizens and

residents of the State of Texas, and to profit from the collections from government payments made on behalf of citizens and residents of the State of Texas.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(a) and (b)  in that a substantial part of the events, acts or omissions that give rise to the claims herein occurred in the Eastern District of Texas.

## IV.  FACTS

10.      The Plaintiff, Patrick Henry Medical, L.L.C., d/b/a Breath of Life (hereafter "PHM"), is a provider of durable medical equipment (a "DME") and services relating to the delivery, set up and maintenance of same, who is under written contract with Prochant for the procurement of intake, insurance billing, collections, cash posting and other services on behalf of PHM.

11.      The Plaintiff, Miracle Durable Medical Equipment d/b/a Miracle DME (hereafter "Miracle"), is a provider of durable medical equipment (a "DME") and services relating to the delivery, set up and maintenance of same.  Prochant, although not under written contract with Miracle, has been handling intake, insurance billing, collections, cash posting and other services for Miracle.

12.      Prochant is a billing and collections company specializing in billing and collections against government and commercial insurance within the medical industry.

13.      Prochant markets and sells its services on a nationwide basis, primarily through its web site http://www.prochant.com  (hereinafter, the "Web Site"). The Web Site makes various claims to prospective clients that, should they retain Prochant, certain outcomes are assured  and may be expected.

14.    Among these outcomes are: "increased overall revenue from insurance billings, decreased accounts receivables, a ninety-nine percent average collection rates, and a thirty-two day average days sales outstanding."

15.    Prochant's Web Site promises that their "billing solutions tackle troubling KPI's, high turnover, reduced reimbursement, and rising labor rates so [the client] can care for [its] patients and grow [its] business."

16.    The Web Site specifically promises that their "Full Service Billing" offering included:

> Dedicated, US-based account managers
> Confirmation of insurance billable orders
> Detailed QA of documentation
> Reviewing & logging CMNs
> Hold management
> Daily billing review prior to submission
> All claim rejections worked daily
> Post all cash (patient pay, wholesale/hospice)
> Review and resolve all mail correspondence
> Manage and resolve all insurance denials
> AR management and follow-up
> Daily, weekly and monthly KPI reports

17.    The Web Site also promised, among other things, "Reliable access to your dedicated team," a "Seamless extension of your business," "Weekly account management calls," "Focus on your specific business metrics," "Usage of industry best practices," a "High degree of accountability," and "Proactive opportunity identification." Further, the Web Site promoted testimonials such as "Working with Prochant, we have gone from 43% accounts receivable (AR) over 90 days to just south of 13%. In this audit rich environment, this result is phenomenal."

18.    During the summer and fall of 2019, Plaintiffs' intake, billing, and collection company's staff submitted resignations or otherwise changed positions within the company, requiring Plaintiffs to alter the way in which they had been conducting their intake, billings, and collections

processes.  Plaintiffs interviewed and or tested several companies before deciding to utilize Prochant's services.  Based on the representations and promises made by Prochant on its Web Site and in reliance of those promises and representations, among others, Plaintiffs sought to have Prochant take over their intake, document chasing, billings and collections.

19.    During Prochant's vetting process to determine whether Plaintiffs qualified to be a Prochant customer,  Prochant represented that it could take a faxed doctor's order and turn it into a deliverable order within two hours (meaning it is dispensable or billable).  Within PHM's industry, the term "dispensable" is very important because many of PHM and Miracle's customers require supplemental oxygen and ventilator support at the time of hospital discharge. It continues to be important because PHM and Miracle can deliver said life-sustaining equipment to the customer in a timely manner and be able to bill for said equipment and services.

20.    On December 16, 2019 PHM entered into a written contract with Prochant.  Attached hereto as Exhibit "A", incorporated herein by reference, is a true and correct copy of the contract between PHM and Prochant.

21.    Under the terms of the contract, Prochant is paid 7.34% of Plaintiffs' collections on AR on accounts aged under 90 days.  Under the terms of the contract, Prochant is paid 10% of Plaintiffs' collections on outstanding accounts receivable (hereafter "A/R") on accounts aged over 90 days.

22.    December 19, 2019 Plaintiffs had $888,082.39 in outstanding A/R of which $616,033.25 was aged 90 days or greater.

23.    The $888,082.39 of Plaintiffs' total outstanding A/R was turned over to Prochant for collections.

24.     On December 16, 2019 the parties began undertaking the transition process from MBS, Plaintiffs' former billing and collections company, to Prochant.

25.     Around the middle of February 2020, Prochant began a soft launch of its performance and by the middle of March 2020 it was, allegedly, fully performing its services under the contract.

26.     The procedure for DME Intake Services are consistent within the industry. In general terms, the standard written order (hereafter "SWO"), along with information such as the patient's name, date of birth, etc., patient history, diagnoses codes, and any testing specific to the type of DME to be dispensed, are transmitted by email or Fax to PHM or Miracle from a doctor's office or from a facility. PHM or Miracle then transfer this information in electronic form by uploading it into "buckets" within the Brightree  DME on-line system (hereafter "Brightree"). Once the information is uploaded to the "bucket," Prochant had access to Brightree and would then: (1) set up the patient account in Brightree; (2) check whether the patient had previously received the same or similar DME, such that the patient was currently disqualified from benefits; (3) verify that the patient was eligible for insurance benefits, whether from Medicare, Medicaid, or private insurance; (4) whether prior authorization  is, or is not, required for the receipt of that specific DME; (5) whether additional documentation is required by the insurance provider; and (6) confirm the order back to either PHM or Miracle depending on which company's customer it is.  This process is known as "intake" within the industry.

27.     Only after intake is concluded and PHM or Miracle have an SWO and a certificate of medical necessity ("CMN") has been logged in and confirmed by Prochant back to PHM or Miracle are PHM or Miracle able to bill for the medical equipment.

28.     The processes described by paragraph 26 is understood within the industry to be what is called the "turnaround time."

29.     During the Prochant vetting of Plaintiffs, Prochant represented that by using its services, Prochant would be able to turn around a faxed or uploaded SWO or CMN into a deliverable order within two hours (a "dispensable order").

30.     Prochant is able and obligated by contract to bill against insurance upon delivery by PHM or Miracle of the DME device which was dispensable.

31.     Prochant represented that it could bring Plaintiffs' daily sales outstanding ("DSO") down to an average of thirty-two days.

32.     Prochant represented that it could achieve a 99% average collection rate.

33.     Prochant touted that its services could reduce Plaintiffs' overall A/R.

34.     Prochant made further representations and assurances that it would provide the following services:

        a.     Medical Necessity Review and Quality Assurance (Medicare Only);

        b.     CMN Management and Follow-up;

        c.     PAR Renewals;

        d.     Intake - as defined in the SOP;

        e.     Review and Log CMN;

        f.     Order confirmation;

        g.     Claims Transmission - all payers;

        h.     Cash Posting;

        i.     Denial Management and follow-up;

> j.      Insurance Account Receivable and Claim Resolution;
>
> k.      Appeals: Redetermination and Reconsideration; and
>
> l.      Ongoing Account Management.

35.      Prochant promised that it was "willing to provide DME and other healthcare medical billing Services including data entry, insurance verification, preauthorization, billing and accounts receivable collections..." and that "Client desires Prochant to perform these Services on its behalf." Contract, Exhibit A, "Background", at page 1;

36.      The Contract contained various provisions that "shock the conscience" such as:

> a.      Prochant disclaims even its own failures to render the contracted-for services, despite having made multiple representations to the contrary: "however [sic] is not responsible for any delays in payments by such payers, and does not guaranty or warrant in any way that claims shall be paid, or that claims paid shall not be subject to recoupment by such payers at a later time," Contract, Exhibit A, clause b, at page 5, and despite later seemingly contradicting their disclaimer "Prochant does not warrant that the Services will be completely error-free." Contract, Exhibit A, clause 6.b, at page 5;
>
> b.      A requirement that PHM notify Prochant of errors before PHM might reasonably be expected to discover such errors, "Client must report any errors in the Services within ten days within ten days [sic] from performance of the applicable Services." Contract, Exhibit A, clause b, at page 5, despite the requirement that Prochant only provide report of such services rendered on a monthly basis, Contract, Exhibit A, clause c, at page 5;
>
> c.      A limitation of liability in favor of Prochant that "In no event shall Prochant be liable for any direct loss or damage that exceeds the highest monthly Fee paid by Client during

the then-current term," yet provides no like limitation on damages for PHM. Contract, Exhibit A, Clause 6.a., at page 6;

      d.    A limitations clause that limits all causes of action to one year, in derogation of Tex. Civ. Prac. & Rem. Code § 16.070, except for payments due Prochant which allows an unlimited period. "Neither party may assert or raise a cause of action, claim, defense or counterclaim against the other party arising under this Agreement, more than one year from the date that same accrued *except for a claim by Prochant for amounts due hereunder which may be asserted or raised at any time from the date invoiced*." [emphasis added]. Contract, Exhibit A, Clause 7.c., at page 6;

      e.    An arbitration clause that places the burden of proof upon PHM "regarding any claims, errors or payments." Contract, Exhibit A, clause 6.d., at page 7;

      f.    An arbitration clause that does not explain who bears the cost of said arbitration. Contract, Exhibit A, clause 7.d., at page 7;

      g.    A clause that permits, in addition to other charges, Prochant to levy an "Early Termination Fee" against PHM which is equal to "300% of the highest monthly Fee amount during the then-current term should Prochant terminate the agreement for any breach. Contract, Exhibit A, clause 7.d., at page 7; and

      h.    A Force Majeure clause that relieves Prochant of any need for performance, yet still obligates PHM to pay for the services it would not be receiving. Contract,  Exhibit A, clause 6.k., at page 7.

    37.    PHM alleges that contract execution occurred within the State of Texas, Grayson County, when PHM, who was the last signatory to the contract, executed said contract.

38.     After the contract was executed, based upon the assertions and representations of Prochant, PHM understood that the transition time from PHM's responsibility for the contracted-for services to Prochant's responsibility would be less than thirty days. See also, Contract, section 1.c., page 3. However, Prochant has not completed its initial setup nor begun full service provision pursuant to the terms of the parties' agreement.

39.     After Miracle began the transfer of billing responsibilities to Prochant, based upon the assertions and representation of Prochant, both Miracle understood that the transition time from their responsibility for the agreed-upon services to full Prochant responsibility would be less than thirty days. However, Prochant had not completed its initial setup nor begun its full service provision pursuant to the terms of the parties' understanding.

40.     During Prochant's vetting of Plaintiffs, it was understood by Plaintiffs that if the parties contracted with one another, Prochant would use Plaintiffs access to Brightree where all of Plaintiffs' patient account information is stored to perform intake, billings and collections, among other things.

41.     Prochant touted that it had some former Brightree employees who then worked for Prochant and expressed how well that these Prochant employees knew the Brightree system.

42.     After PHM and Prochant entered into a contract on December 16, 2019, Prochant unveiled that it had its own portal and would be uploading from Brightree's system all of Plaintiffs' patient account information to Prochant's portal.

43.     Prochant was requested by Plaintiffs to work in the Brightree system, as it had agreed it would, and Prochant refused.

44.    Plaintiffs were never given full access to and training on Prochant's portal so as to be able to measure and monitor  Prochant's performance.

45.    Prochant further made unauthorized write-offs.

## V.  FRAUDULENT  INDUCEMENT

46.    Plaintiffs reassert, replead, and reallege the factual allegations set forth in each and every preceding paragraph as if fully set forth herein and further allege the following:

47.    Prochant  made the statements, assurances, representations, and promises contained in paragraphs 13 - 17, 19, 29, 31-34 and 41.

48.    Prochant either knew, or should have known, that the statements, assurances, representations, and promises alleged herein were false and/or Prochant made such statements, assurances, representations, and promises recklessly and lacked the knowledge of the truth of such representations and such statements were made as positive assertions.

49.    Prochant intended that Plaintiffs should rely or act on the misrepresentations.

50.    Plaintiffs relied on the misrepresentations.

51.    The misrepresentations made by Prochant were material and made with the intention to induce PHM to enter into the contract with Prochant.

52.    Based upon the misrepresentations, Plaintiffs hired Prochant to perform its services.

53.    The Plaintiffs' reliance on the misrepresentations was reasonable based upon the circumstances.

54.    The misrepresentations of Prochant caused Plaintiffs injury.

## VI.  COMMON LAW FRAUD

55.     Plaintiffs reassert, replead, and reallege the factual allegations set forth in  each and every preceding paragraph as if fully set forth herein and further allege the following:

56.     Prochant made the representations and assurances contained in 13 - 17, 19, 29, 31-34 and 41 which it either knew, or should have known, were false at the time they were made, or were made recklessly, as a positive assertion, without any knowledge of the truth, and made with the intent to induce Plaintiffs to utilize Prochant's services.

57.     Such statements, assurances, representations, and promises were made by Prochant to Plaintiffs as positive assertions and such statements, assurances, representations, and promises were material to Plaintiffs decision to utilize Prochant's services.

58.     Based upon the prior representations made to Plaintiffs by Prochant, and in justifiable reliance on such representations, Plaintiffs began utilizing Prochant's services by transferring their intake, billings and collections to Prochant.

59.     As a result of the foregoing conduct by Prochant, Plaintiffs have suffered injury and seek to recover their damages proximately caused thereby.

## VII.  BREACH OF CONTRACT

**A.     BREACH OF CONTRACT AS TO PATRICK HENRY MEDICAL, L.L.C. D/B/A BREATH OF LIFE**

60.     Plaintiff reasserts, repleads, and realleges the factual allegations set forth in each and every preceding paragraph as if fully set forth herein and further alleges the following:

61.     Prochant breached its contractual promises in the following manners:

    1.     Prochant systematically failed to perform intake;

    2.     Prochant systematically failed to perform intake in a timely manner;

3.     Prochant systematically failed to use Brightree's system;

4.     Prochant systematically failed to allow full access to Prochant's portal;

5.     Prochant systematically failed to deliver a dispensable order within two hours;

6.     Prochant systematically failed to bring Plaintiffs' DSO down to an average of thirty-two days;

7.     Prochant systematically failed to achieve a 99% average collection rate;

8.     Prochant systematically failed to achieve a 24% average on 90+AR%;

9.     Prochant systematically failed to timely provide notices to Medicare, Medicaid and commercial insurance carriers on Plaintiffs' outstanding accounts receivables;

10.    Prochant systematically improperly notified Plaintiffs of claims that needed prior authorization;

11.    Prochant systematically failed to properly vet "same or similar" prior claims; and

12.    Prochant systematically failed to timely confirm orders.

62.    Prochant's failure to properly perform intake services resulted in economic detriment to Plaintiffs.

63.    Prochant's refusal to work within the Brightree software prevented Plaintiff from having the ability to monitor Prochant's performance and it had been one of Prochant's selling points, to induce Plaintiff to utilize its services, that Prochant had several of Brightree's former employees and that they knew the Brightree system very well.

64.    As the result of Prochant's breaches, multiple claims were delayed, denied, or aged past the allowable claims submission dates, to Plaintiff's economic detriment. Specifically, because of Prochant's breaches, Plaintiffs have either lost the time value of the claims payments, or are entirely precluded from collecting upon the claims because of denials or time limitations.

65.     Plaintiff's A/R began to increase at an alarming rate, and payments on submitted claims did not increase as Prochant had promised.

66.     Prochant's performance was so poor that over the course of 2020, Plaintiffs' total aged A/R went from approximately $888,000.00 to approximately $1,398,000.00.  See Exhibit "B", attached hereto and incorporated herein by reference, which is a true and correct aging report of Plaintiffs and the graphs, which represent the figures in the aging report for Plaintiffs' A/R over time, which show the growth in Plaintiffs' A/R over the period of time that  Prochant's services were being utilized by Plaintiffs, in part, for collections.

67.     Prochant's failure to provide timely notices to Medicaid, Medicare and commercial insurance companies resulted in an unauthorized $303,000.00 write-off from Plaintiffs' A/R by Prochant in the month of April, 2021.

68.     These breaches, either singularly, or in some combination with one another, were a proximate cause of injury and resulting damages to Plaintiffs.

69.     All breaches of Prochant alleged herein were material.

## B.     BREACH OF CONTRACT AS TO MIRACLE DURABLE MEDICAL EQUIPMENT, INC., D/B/A MIRACLE DME

70.     Miracle and Prochant, established by their conduct, an implied agreement that Prochant would provide intake, billing and collection services as outlined in the preceding paragraphs, realleged and incorporated herein by reference.

71.     This agreement was created because Prochant made the representations and assurances contained in 15 - 19, 21, 31, 33-36 and 43 upon which Miracle acted by turning over its billing and collections to Prochant, and Prochant undertook to perform those intake, billing and collection actions.

72.     Since December 16, 2019, for each and every month until June 6, 2021, Prochant continued to supply the foregoing services and Miracle paid Prochant for those services.

## VIII.  NEGLIGENT MISREPRESENTATION

73.     Plaintiffs re-allege and incorporate by reference each and every preceding paragraph of this petition and further allege the following:

74.     Prochant supplied this false information alleged in paragraphs 13 - 17, 19, 29, 31-34 and 41, in the course of its business and/or for the guidance of Plaintiffs in their business transactions with Prochant.

75.     Prochant failed to exercise reasonable care or competence in obtaining or communicating the information to Plaintiffs.

76.     As previously alleged, Plaintiffs suffered pecuniary loss by justifiably relying on Prochant's representations.

## IX.  DAMAGES

77.     Plaintiffs reallege and incorporate herein each and every paragraph of this Plaintiffs' Original Complaint and further allege that Prochant's conduct has been the proximate cause of injury and the resulting actual damages to PHM in the amount of FOUR HUNDRED SIXTY EIGHT THOUSAND FOUR HUNDRED THIRTY ONE and 51/100 DOLLARS ($468,431.51) and to Miracle in the amount of EIGHTY THREE THOUSAND SEVENTY FIVE and 03/100 DOLLARS ($83,075.03).

## X.  ATTORNEY'S FEES

78.     Prochant's conduct as described in the foregoing paragraphs has necessitated Plaintiffs to retain Corley Law Firm in order to prosecute their claims against Prochant. Plaintiffs are entitled

to recover reasonable and necessary attorney's fees under Section 38.001 of the Civil Practice and Remedies Code.

## XI. CONDITIONS PRECEDENT

79.     All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Patrick Henry Medical, LLC and Miracle Durable Medical Equipment, Inc. pray that citation issue and that Prochant, Inc. be cited to make its appearance and answer herein and that after notice and trial hereof the Court grant relief and award judgment in favor of Plaintiffs against Prochant, Inc. in the following manner:

1.     Plaintiffs' actual damages found to have been the proximate cause of Prochant, Inc.'s breaches of contract, negligence misrepresentation, common law fraud and/or fraudulent inducement;

2.     Prejudgment interest as provided by law;

3.     Attorney's fees;

4.     Postjudgment interest as provided by law;

5.     Costs of suit; and

6.     Such other and further relief to which the plaintiffs may have shown themselves to be justly entitled at law or in equity, general or special.

Respectfully submitted,

**CORLEY LAW FIRM**

By: /s/ Gary D. Corley
     Gary D. Corley
     Texas Bar No.: 04823800

Jared T. Elk

Texas Bar No.: 24114494
Michael D. "Mickey" Fox
Texas Bar No.: 24068741
108 North Travis Street
Sherman, Texas  75090
Tel.  (903) 892-1048
Fax. (214) 260-4925
E-mail: garycorley@gcorleylaw.com
E-mail: jared@gcorleylaw.com
E-mail: mickey@gcorleylaw.com

**ATTORNEYS FOR PLAINTIFFS PATRICK HENRY MEDICAL L.L.C. and MIRACLE DURABLE MEDICAL EQUIPMENT, INC.**