# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PATRICK HENRY MEDICAL, L.L.C., | § | |
| d/b/a BREATH OF LIFE and MIRACLE | § | |
| DURABLE MEDICAL EQUIPMENT, | § | Civil Action No. 4:21-cv-00430 |
| INC., d/b/a/ MIRACLE DME, | § | Judge Mazzant |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| PROCHANT, INC., | § | |
| | § | |
| *Defendants.* | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Prochant, Inc.'s Motion to Transfer (Dkt. #9). Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED**.

## BACKGROUND

Plaintiffs Patrick Henry Medical, L.L.C., d/b/a/ Breath of Life ("BOL") and Miracle Durable Medical Equipment, Inc., d/b/a/ Miracle DME ("Miracle") supply durable medical equipment (Dkt. #21 at p. 2). Plaintiffs are both Texas companies (Dkt. #21 at p. 2). Defendant Prochant, Inc. ("Prochant") is a medical billing and collections company (Dkt. #1 ¶ 12). Prochant is incorporated under the laws of the State of Georgia and maintains its principal place of business in Charlotte, North Carolina (Dkt. #1 ¶ 4).

On December 12, 2019, Prochant and BOL entered into a Billing Services Agreement (the "Agreement") (Dkt. #9 at p. 2). On multiple occasions in 2021, the parties had issues over non-payment under the Agreement (Dkt. #9 at p. 4).

On June 7, 2021, BOL and Miracle brought suit, alleging fraudulent inducement, common law fraud, breach of contract, and negligent misrepresentation (Dkt. #1 ¶¶ 46–76).  On August 17, 2021, Prochant moved to transfer the case to the United States District Court for the Northern District of Georgia (Dkt. #9).  BOL and Miracle responded on September 17, 2021 (Dkt. #21).[1]

## LEGAL STANDARD

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The purpose of Section 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight."  *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

---

[1] Defendant also filed a Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. #22) pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Defendant moved, albeit informally, to compel arbitration (Dkt. #22). Since the Court is granting Defendant's motion to transfer, the Court need not reach the remaining motions Defendant filed.

## ANALYSIS

Prochant contends the Agreement's forum selection clause (the "Clause") mandates exclusive jurisdiction in Georgia, thus the Court should transfer the case to the United States District Court for the Northern District of Georgia (Dkt. #9).  BOL and Miracle argue the Clause is permissive rather than mandatory, and venue is proper in the Eastern District of Texas, therefore transfer or dismissal would be inappropriate (Dkt. #21).

In the typical § 1404(a) analysis, once the threshold inquiry of whether "the judicial district to which transfer is sought would have been a district in which the claim could have been filed" is met, the district court weighs the relevant public and private factors.  *Volkswagen I*, 371 F.3d at 203.  The district court decides whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice."  *Id.*  The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Id.* The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the interest in having localized issues decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or applying the foreign law.  *Id.*  A court also gives some weight to the plaintiff's choice of forum.  *Atl. Marine Constr. Vo. v. United States Dist. Court*, 571 U.S. 49, 62 n.6 (2013).

However, "[t]he existence of a mandatory, enforceable [forum selection clause] dramatically alters this analysis."  *Sabal Ltd. LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 916 (W.D. Tex. 2016).  This is primarily because "a forum-selection clause . . . may have figured centrally in the parties' negotiations and may have affected how they set monetary and other

contractual terms." *Atl. Marine*, 571 U.S. at 66. In fact, it may "have been a critical factor in their agreement to do business together in the first place." *Id.* As such, "when parties have contracted in advance to litigate disputes in a particular forum," district courts should adjust their usual § 1404(a) analysis in three ways so as not to "not unnecessarily disrupt the parties' settled expectations." *Id.* at 66–67.

First, the plaintiff's choice of forum "merits no weight"; rather, the plaintiff has the burden of establishing that § 1404(a) transfer is unwarranted. *Id.* Second, because the parties have contracted for a specific forum they "waive the right to challenge the preselected forum as inconvenient." *Id.* at 64. Consequently, the court will not consider the private-interest factors. Instead, the court considers only the public interest factors. *Id.* "Because those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases." *Id.* Cases in which the public interest factors are sufficiently strong to outweigh a valid forum selection clause "will not be common." *Id. See also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016).

## A.  Whether the Northern District of Georgia Would Have Been a Proper Venue

As previously mentioned, the threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. This requires the court to conduct a proper venue analysis under § 1391(b). Under § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For purposes of venue, a defendant is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). However, when a corporation is located

4

in a state with multiple federal jurisdictions, like Georgia, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). Thus, the Court conducts a personal jurisdiction "minimum contacts" analysis. *Shaw v. Sonoco Prods. Co.*, No. 4:17-cv-501, 2017 WL 4532638, at *3 (E.D. Tex. Sep. 19, 2017).

In determining personal jurisdiction, there are two types of minimum contacts: (1) those giving rise to general jurisdiction; and (2) those giving rise to specific jurisdiction. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A forum has general jurisdiction when the defendant's contacts are "systematic and continuous[.]" *See Jackson v. FIE Corp.*, 302 F.3d 515, 530–31 (5th Cir. 2002); *see also Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984). For a corporation, the place of incorporation and principal place of business are the key bases for general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros*, 466 U.S. at 414 n.8). Here, Prochant is the sole defendant and is incorporated under the laws of the State of Georgia (Dkt. #1 ¶ 4). Thus, Prochant is "at home" in Georgia and would be subject to general jurisdiction in Georgia's courts. *Id.* at 137. Furthermore, neither BOL nor Miracle contend that the Northern District of Georgia is an improper venue, rather they argue the Georgia court would be inconvenient (Dkt. #21 at p. 6). Consequently, the Court finds venue would be proper in the Northern District of Georgia for purposes of § 1391.

## B. Mandatory Nature, Applicability, and Enforcement of the Forum Selection Clause

Before the Court may weigh the public interest factors in the forum selection clause § 1404(a) analysis, the Court must determine that the forum selection clause at issue is both mandatory and enforceable. *Sabal Ltd. LP*, 209 F. Supp. 3d at 916. While federal law governs the

enforceability of a forum selection clause, *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997), "the question of enforceability is analytically distinct from the issue of interpretation: [o]nly after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play." *Weber*, 811 F.3d at 770.

The Court finds that, under the applicable law, the Clause is both mandatory and enforceable.  The Court discusses each point in turn.

### 1. Whether the Clause is Mandatory or Permissive

The Court must determine whether the Clause is mandatory or permissive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994).  "A party's consent to jurisdiction in one forum does not necessarily waive that party's right to have an action heard in a different forum." *New Orleans v. Mun. Admin. Serv., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *accord Caldas & Sons*, 17 F.3d at 127.  "For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *New Orleans*, 376 F.3d at 504 (citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974)); *see also Weber*, 811 F.3d at 768 (holding that a forum selection clause is mandatory only if it contains clear language specifying that litigation must occur in the specified forum).

Although enforceability of a forum selection clause is analyzed under federal law, where there exist both valid forum selection and choice of law clauses, the substantive law identified in the choice of law clause governs interpretation of the forum selection clause. *See Atl. Marine*, 571 U.S. at 62 (observing that lower court "erred in failing to make the adjustments required" because "the transfer motion [was] premised on a forum-selection clause"); *Martinez v. Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014) ("[C]ourts must apply the law contractually chosen by the parties to interpret the [forum selection] clause.").  However, a court sitting in diversity applies the

forum's choice of law rules to determine what substantive law should guide the court's interpretation of the forum selection clause. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941).[2]  To be sure, "the presence or absence of a specific choice-of-law clause does not alter the core obligation of a federal court, sitting in diversity, to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction." *Weber*, 811 F.3d at 770–71.  This action was brought in a Texas federal court, so under *Klaxon*, Texas choice of law rules apply.  "Texas law gives effect to choice of law clauses regarding construction of a contract." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002)).

The parties negotiated a choice of law clause in their Agreement. It states the "Agreement shall be governed by and construed in accordance with the substantive laws of the State of Georgia, without regards to principles of conflict of laws" (Dkt. #1, Exhibit A ¶ 7.c).  Because Texas choice of law rules give effect to choice of law clauses, the Court will apply Georgia substantive law to interpret the Agreement.

Under Georgia law, "[t]he hallmark of contract construction is to ascertain the intention of the parties." *Golden v. Nat'l Life & Accident Ins. Co.*, 189 Ga. 79, 87 (2) (5 SE2d 198) (Ga. 1939). In Georgia, the construction of a contract involves three steps: (1) the court determines whether the language of the contract is clear and unambiguous; (2) then, if the court determines the contract is ambiguous, the court applies the rules of contract construction to resolve the ambiguity; and (3) if the ambiguity remains after applying the rules of construction, the issue of what the

---

[2] In *Weber*, the Fifth Circuit indicated that neither it, nor the "sister circuits appear to have hewn closely to this principle in interpreting forum selection clauses.  The courts have interpreted forum selection clauses according to general common-law contract principles without addressing the precise source of that law." 811 F.3d 758 at 770.  It reasoned "[t]he use of this general-law approach may be because, in this circuit and others, the enforceability of a [forum selection clause] is governed by federal law." *Id.*

ambiguous language means and what the parties intended is resolved by the trier of fact.  *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (3) (743 SE2d 381) (Ga. 2013).  Where the terms are clear and unambiguous—that is, where the terms are capable of only one reasonable interpretation—the court looks to the contract alone to ascertain the parties' intent.  *Park ' N Go v. United States Fid. & Guar. Co.*, 266 Ga. 787, 791 (Ga. 1996).  However, if the contract's terms are ambiguous, then any ambiguities in the contract are strictly construed against the drafter of the document.  *Boardman Petroleum v. Federated Mut. Ins. Co*., 269 Ga. 326, 329 (498 SE2d 492) (Ga. 1998).

> The Clause here states:

> Subject to subsection d, below, the parties consent to the exclusive jurisdiction of the Superior Court of Coweta County, Georgia or the United States District Court for the Northern District of Georgia, over any action or proceeding arising out of or relating to this Agreement.

 (Dkt. #1, Exhibit A at p. 7).  Prochant argues that the forum selection clause is mandatory given the words "exclusive jurisdiction" (Dkt. #9).  BOL and Miracle contend the Clause authorizes jurisdiction in the courts of the State of Georgia but does not preclude jurisdiction in the Eastern District of Texas (Dkt. #21).

In *United States ex rel. Kirby Bldg. Sys., LLC v. Gator Steel Bldgs., Inc.*, No. 4:12-cv-263, 2013 WL 5295723 (S.D. Ga. Sept. 18, 2013), a court applying Georgia law was confronted with almost identical language to the Clause.  In *Gator Steel*, the forum selection clause stated that each party "consents to the exclusive jurisdiction[] of the state and federal courts in the state in which the Facility is located . . . for any litigation which may arise out of or be related to this Agreement."  *Id.* at *1.  The court reasoned that "[e]xclusive connotes proper jurisdiction *only* in Tennessee."  *Id.* at *2 (emphasis in original).  Thus, the court held the clause was mandatory.  *Id.*

Even more, courts consistently hold that forum selection clauses with similar language to the Clause here—stating that the parties consent to the exclusive jurisdiction of courts in a particular state or other location—are mandatory. *FCX Solar, LLC v. FTC Solar, Inc.*, No. 6:21-cv-548-ADA, 2021 WL 4953912 (W.D. Tex. Oct. 25, 2021) (finding mandatory a clause which stated: "The Parties hereby consent to the exclusive jurisdiction and venue of a competent court sitting in the state of New York, for the adjudication of all matters arising from the subject matter of this agreement."); *Matheson Tri-Gas, Inc. v. FlexTM, Inc.*, No. 4:18-CV-0248, 2018 WL 2363958 (S.D. Tex. May 24, 2018) (holding forum selection clause was mandatory where parties agreed "to consent to the exclusive jurisdiction of the courts of the State of Texas with regard to any dispute arising hereunder"); *KTV Media Int'l, Inc. v. Galaxy Group, LA LLC*, 812 F. Supp. 2d 377, 384–85 (S.D.N.Y. 2011) (deciding a forum selection clause providing that the contract parties "consent[]" to the "exclusive jurisdiction" of California courts was mandatory, rather than permissive); *Travel Exp. Inv. V. AT&T Corp.*, 14 So. 3d 1224, 1227 (Fla. 5th DCA 2009) ("This exclusivity provision clearly makes this clause unambiguous and mandatory."); *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004) (holding mandatory a forum selection clause which stated the parties "consent to the exclusive jurisdiction of the courts of Montgomery County, Pennsylvania").

Because the Clause states the parties consented to "exclusive jurisdiction," the Court finds the Clause is mandatory, and assuming the Clause is legally enforceable and applicable, it must be enforced in this case.

## 2. Enforceability of the Agreement's Forum Selection Clause

The court must decide whether the forum selection clause is enforceable. "We begin with federal law, not state law, to determine the enforceability of a forum-selection clause. Under

9

federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (citations omitted).   Under federal law, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).   Enforcement of a forum selection clause is unreasonable if: (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause will contravene a strong public policy of the forum state.   *See Haynsworth*, 121 F.3d at 963.   The party seeking to avoid enforcement of a forum selection clause bears a heavy burden in showing unreasonableness.   *Id.*

Prochant contends BOL and Miracle present no evidence to satisfy their high burden of showing unreasonableness (Dkt. #9 at p. 6).   The Court agrees.   BOL and Miracle fail to make any argument regarding unreasonableness, nor do they provide any evidence that would allow the Court to evaluate the Clause's reasonableness under *Haynsworth* (Dkt. #21).   The Court can find no reason to deem the Clause unreasonable.   Accordingly, the Clause is enforceable.

### 3.   Applicability of the Forum Selection Clause

When a forum selection clause is mandatory, the court must also determine whether the causes of action at issue arise under the forum selection clause.   *Ginter*, 536 F.3d at 441 (citing *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 222–23 (5th Cir. 1998)).   To make this determination, the court interprets the forum selection clause to determine its applicability to the

instant dispute. *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 304 (5th Cir. 2016). Again, because this Agreement contains a choice of law provision, the Court will apply Georgia substantive law to interpret the contract.

"Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause [in the contract] governs the action." *Moon v. CSA-Credit Sols. of Am., Inc.*, 304 Ga. App. 555, 556 (2010) (quoting *Hugel v. Corp. of Lloyd's*, 999 F2d 206, 209 (7th Cir. 1993)). Though few cases exist in which Georgia courts have interpreted contracts concerning the language at issue here, two cases are instructive.

In *Brinson v. Martin*, a forum selection provision in an employment contract stated that "the exclusive venue for the pursuit of any legal proceeding or remedy *arising out of* this contract shall be Douglas County, Nebraska." 220 Ga. App. 638 (469 SE2d 537) (1996) (emphasis added). The plaintiff in *Brinson* sued his employer for breach of contract, and sued four other employees of the defendant for tortious interference with economic relations and unjust enrichment. *Id*. at 638–640. The court held the tortious interference and unjust enrichment claims arose directly or indirectly from the contract, thus the forum selection clause applied to those claims. *Id*. at 640. The Georgia Court of Appeals took up this issue again in *Moon*, which concerned, in part, the applicability of a forum selection clause where parties agreed "the laws of the State of Texas shall govern *any* disputes *arising from* this AGREEMENT." 304 Ga. App. at 555 (emphasis added). The Georgia Court of Appeals affirmed the forum selection clause applied to plaintiff's claims that the services the defendant provided under the contract violated Georgia statutes. *Id*. at 556.

The Clause here has similar language to the forum selection clauses in *Brinson* and *Moon*. It states the parties agree to jurisdiction in Georgia for "*any* action or proceeding *arising out of or relating to* this Agreement." (Dkt. #1, Exhibit A ¶ 7.c) (emphasis added). Moreover, neither side

11

disputes the Clause's applicability here.  Given the text of the Agreement and the parties' apparent concession regarding applicability, the Court interprets the Clause to apply in this dispute.

### C.  Section 1404 Factors

Having found the Clause is mandatory, applicable, and enforceable, the Court now turns to weigh the public interest factors under the altered forum selection clause § 1404(a) analysis.  As discussed, "when parties have contracted in advance to litigate disputes in a particular forum," district courts should adjust their usual § 1404(a) analysis in three ways so as not to "not unnecessarily disrupt the parties' settled expectations." *Atl. Marine*, 571 U.S. at 66–67.

First, the plaintiff's choice of forum "merits no weight"; rather, the plaintiff has the burden of establishing that § 1404(a) transfer is unwarranted. *Id.* at 66–67.  Second, the court will not consider the private-interest factors.  Because the parties have contracted for a specific forum, they "waive the right to challenge the preselected forum as inconvenient." *Id.* at 64.  Instead, the court considers only the public interest factors. *Id.*  The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the interest in having localized issues decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or applying the foreign law. *Id.* Importantly, because these "factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases." *Id.*

BOL and Miracle have not established that a § 1404 transfer is unwarranted nor that this is an unusual case in which the public interest factors defeat the motion to transfer.

### 1.  BOL and Miracle's Burden to Show Transfer is Unwarranted

BOL and Miracle have failed to establish transfer is unwarranted.  Rather than make an argument to the Court, BOL and Miracle presume the Clause is permissive (Dkt. #21 at p. 5). Thus, BOL and Miracle's arguments are premised on Prochant maintaining the burden that the

case should be transferred pursuant to § 1404 (Dkt. #21 at pp. 5–6).  Apart from arguing that Georgia is an inconvenient forum, and that Prochant's connection to Georgia is "strained and attenuated" due to having its corporate office in North Carolina (Dkt. #21 at p. 6), BOL and Miracle fail to present any facts or evidence that a transfer of this case to the Northern District of Georgia is unwarranted.  Accordingly, BOL and Miracle have failed to meet their burden.

## 2.  Public Interest Factors

Likewise, the public interest factors do not weigh in favor of or against transfer to the Northern District of Georgia—they are neutral.  First, the administrative difficulties flowing from court congestion are neutral.  In considering this factor, the speed with which a case can come to trial and be resolved may be relevant.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008); *Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984).  In 2020, the Northern District of Georgia had 7,117 cased filed and eleven active district judges.  https://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2020.  The Eastern District of Texas had 4,249 cases filed and eight active district judges.  *Id.*  Though federal courts across the country face congested dockets, the Northern District of Georgia maintains a heavier case load than the Eastern District of Texas.  Conversely, the most recent statistics obtained by the Court for the twelve-month period ending on September 30, 2020 indicate that the median time from filing to disposition in civil cases was 8.9 months in the Eastern District of Texas and 5.7 months in the Northern District of Georgia.  https://www.uscourts.gov/statistics-reports/judicial-business-2020-tables.  Thus, this factor is neutral, as the congestion in the Northern District of Georgia is greater than that of the Eastern District of Texas, but the time frame for disposition in the Northern District of Georgia appears to be shorter.

Next, the Court finds that the interest in having localized issues decided at home is a neutral factor.  The local interest factor "regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connection between a particular venue and the events that give rise to a suit.'" *R2 Sols. LLC v. Target Corp.*, No. 4:21-cv-92, 2021 WL 2550908, at *5 (E.D. Tex. June 22, 2021) (citing *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010))).  While neither side submits argument on this factor, the Court finds both the Eastern District of Texas and the Northern District of Georgia have an interest in this case.  The Northern District of Georgia's interest is slight, as Prochant is merely incorporated under the laws of Georgia and Prochant has not provided the Court with any other information evidencing its connection to the Northern District of Georgia.  On the other hand, because BOL has its principal place of business in Sherman, Texas and Miracle was incorporated under the laws of the State of Texas (Dkt. #12 ¶ 2–3), the Eastern District of Texas has a connection to the case.  *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, 4:15-CV-548-ALM, 2016 WL 4095547, at *3 (E.D. Tex. Aug. 2, 2016).  Thus, the Court finds this factor is neutral.

The latter two factors are also neutral.  While the Court today does not engage in a choice of law analysis to determine whether Texas or Georgia law will govern the merits of this case, the Court finds that in either circumstance, the District of Georgia, as a federal court, is well-suited to deal in either area of law.  Just as this Court applied Georgia substantive law to interpret the Agreement, the Northern District of Georgia can apply Texas law, should it determine Texas law will govern the matter.

Consequently, the public interest factors cut neither for nor against transfer of this case to the Northern District of Georgia.  Only in unusual cases will the public factors defeat the motion

to transfer when there is a valid, enforceable forum selection clause.  Because a valid forum selection clause exists and the public factors are largely neutral here, this is not one of those unusual cases.

## CONCLUSION

It is therefore **ORDERED** that Defendant Prochant, Inc.'s Motion to Transfer  (Dkt. #9) be **GRANTED** and that the case be transferred to the United States District Court for the Northern District of Georgia.

**IT IS SO ORDERED.**

**SIGNED this 29th day of November, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE